**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSHUA LINDENMUTH** | : | |
| **241 N. Broad Mountain Avenue** | : | **CIVIL ACTION** |
| **Frackville, PA 17931** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Plaintiff,** | : | |
| **v.** | : | **No.** |
| | : | |
| **BOROUGH OF FRACKVILLE** | : | |
| **42 South Center Street** | : | |
| **Frackville, PA 17931** | : | |
| | : | |
| *And* | : | |
| | : | |
| **POLICE CHIEF PAUL OLSON III** | : | |
| **42 South Center Street** | : | |
| **Frackville, PA 17931** | : | |
| | : | |
| *And* | : | |
| | : | |
| **OFFICER JOSEPH MURTON** | : | |
| **42 South Center Street** | : | |
| **Frackville, PA 17931** | : | |
| | : | |
| *And* | : | |
| | : | |
| **SCHUYLKILL COUNTY** | : | |
| **401 North Second Street** | : | |
| **Pottsville, PA 17901** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

AND NOW, comes the Plaintiff, Joshua Lindenmuth, by and through his undersigned counsel, van der Veen, Hartshorn & Levin, to file the instant Complaint in Civil Action against Defendants Borough of Frackville, Police Chief Paul Olson III, Officer Joseph Murton, and Schuylkill County. Plaintiff brings this civil rights action under 42 U.S.C. § 1983 to redress violations of his Fourth and Fourteenth Amendment rights.  Plaintiff was wrongfully arrested,

placed in prolonged detention, and subjected to invasive jail processing based solely on a shared name with an unrelated individual who was the subject of a bench warrant.

## JURISDICTION AND VENUE

1.      Jurisdiction in this Court is invoked pursuant to 42 U.S.C. § 1983.

2.      Venue lies in this District under 28 U.S.C. § 1391(b) because the events occurred within the Middle District of Pennsylvania and all defendants are domiciled therein.

3.      This Court has subject matter jurisdiction over Plaintiff's federal claim under 28 U.S.C. §§ 1331 and 1343.

## PARTIES

4.      Plaintiff Joshua Lindenmuth ("Plaintiff") is an adult male residing in Frackville, Pennsylvania at the above referenced address.

5.      Defendant Borough of Frackville ("Defendant Borough") is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania, which maintains its principal offices as captioned. Defendant Borough is responsible for hiring, training, and disciplining police officers within the Borough of Frackville Police Department.

6.      Defendant Paul Olson III ("Chief Olson") is an adult resident of Pennsylvania, who at all times material to this complaint was the Chief of Police for the Frackville Police Department and acted as a final policymaker for law enforcement operations, training, supervision, and arrest procedures.  Chief Olson is named in both his individual and supervisory capacity.

7.      Defendant Joseph Murton ("Officer Murton", collectively with Chief Olson, the "Officer Defendants") is an adult resident of Pennsylvania, who at all times material to this complaint was a sworn Frackville police officer acting within the scope of his employment.

8.      Defendant Schuylkill County ("Schuylkill County") is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania, which maintains its principal offices as captioned.  At all material times herein, Schuylkill County was responsible for the maintenance, operation, and supervision of the Schuylkill County Jail located at 230 Sanderson St., Pottsville, PA 17901.

## FACTUAL ALLEGATIONS

9.      On August 19, 2025, at approximately 4:00 p.m., Plaintiff contacted the Frackville Police Department regarding two of his vehicles that had recently been marked "Tag to Tow."

10.      Shortly thereafter, Chief Olson arrived at Plaintiff's location, followed by Officer Murton.

11.      Chief Olson immediately began questioning Plaintiff about a vehicle allegedly involved in a collision with a fence at Goodwill Park.  He further seemingly accused Plaintiff of being the one who was in the vehicle that struck the fence, which he contended was Plaintiff's father's vehicle.

12.      Plaintiff knew absolutely nothing about the incident referenced by Chief Olson and informed him as much.  Chief Olson proceeded to then question Plaintiff about why he had called law enforcement, and Plaintiff responded that it was in regard to his vehicles being marked "Tag to Tow."

13.      After a brief discussion regarding the "Tag to Tow" designations, and just as it appeared Officer Defendants were about to leave, Plaintiff was told to put his hands behind his back and that he was under arrest based on an outstanding bench warrant.

14. Plaintiff was shocked given that he had never been in trouble with the law before and asked what the warrant was for. Officer Defendants told Plaintiff that the warrant was for failing to appear for Court; however, Plaintiff never was scheduled for a Court appearance.

15. Unbeknownst to Plaintiff, Officer Defendants were actually looking for another man by the name of Joshua Lindenmuth who had failed to appear for Court on or around June 25, 2025.

16. The correct Joshua Lindenmuth that authorities were searching for was a 32-year-old man previously known to law enforcement, whereas Plaintiff was twenty years old and had no criminal history.

17. Plaintiff advised Officer Defendants that his driver's license was located in his pocket. Officer Defendants retrieved Plaintiff's license, looked at it for a brief second, then incredulously claimed to have confirmed Plaintiff was the correct individual subject to the bench warrant.

18. Importantly, as he was not yet twenty-one, Plaintiff still had a vertical junior driver's license that could in no way be confused with the license of a 32-year-old man.

19. Officer Defendants then put handcuffs on Plaintiff and put Plaintiff in Officer Murton's car while awaiting confirmation of the warrant.

20. During this time, Chief Olson continued questioning Plaintiff regarding the Goodwill Park incident that Plaintiff had already informed Chief Olson he was not involved in.

21. Officer Defendants knew or should have known that the individual in their police vehicle was not the correct Joshua Lindenmuth, particularly given the fact that Plaintiff readily provided his driver's license demonstrating that he was twelve years younger than the individual they were seeking. However, Officer Defendants failed to take any reasonable steps to confirm

that the biographical information for the individual they were seeking matched they person they had apprehended.

22.    After the warrant was supposedly confirmed, Officer Murton transported Plaintiff to the Schuylkill County Prison, where he was taken into custody and processed.

23.    During intake, Schuylkill County Prison personnel questioned Plaintiff regarding the basis for his arrest and expressed confusion about why Plaintiff was being held, because the biographical information being provided did not match that of the person with an outstanding bench warrant.

24.    Plaintiff explained to Schuylkill County Prison personnel that they did not have the correct person in custody, and the corrections personnel indicated they believed he was correct, but that given the hour in the day they would not be able to do anything about it until Plaintiff attended court the following day.

25.    Plaintiff was strip searched and placed into a cell at approximately 4:45p.m., despite Schuylkill County Prison personnel acknowledging that they likely had the wrong person in custody.

26.    Plaintiff remained confined until approximately 10:00 p.m., at which time jail personnel took Plaintiff for a medical examination and administered a tuberculosis vaccination without his consent. Plaintiff was then returned to his cell which he shared with another arrested individual.

27.    At approximately 7:00 a.m. the following morning, Plaintiff was removed from his cell and questioned by an individual he believes to be affiliated with the District Attorney's Office of the Court in preparation for his appearance.

28.    When Plaintiff advised that his birth date was February 4, 2005, the individual he was speaking with immediately stated that they had the wrong individual and ensured that Plaintiff was released around 9:30 a.m.

29.    Plaintiff spent over fifteen (15) hours in custody before he was released.

30.    A simple comparison of Plaintiff's date of birth with the warrant subject's identifying information would have immediately confirmed Plaintiff was not the person sought.

31.    Defendants ignored readily available exculpatory information and continued Plaintiff's detention despite obvious discrepancies.

32.    As a direct result of Defendants' actions in wrongfully arresting Plaintiff, Plaintiff suffered loss of liberty, humiliation, emotional distress, and unwanted bodily invasion.

33.    Following Plaintiff's wrongful arrest and detention, Chief Olson was terminated from his position as Chief of Police and Officer Murton resigned from his position as a police officer. Upon information and belief, these personnel actions were taken in response to Officer Defendants' conduct toward Plaintiff.

### COUNT I – UNLAWFUL SEIZURE / FALSE ARREST
### 42 U.S.C. § 1983
*Against Officer Defendants*

34.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

35.    Officer Murton seized and arrested Plaintiff without probable cause, based solely on Plaintiff sharing a name with the subject of an outstanding bench warrant.

36.    At the time of Plaintiff's arrest, Officer Defendants possessed or had immediate access to Plaintiff's identifying information, including Plaintiff's date of birth.

37.    The individual who was the actual subject of the warrant was twelve years older than Plaintiff and previously known to law enforcement.

38.    Officer Murton physically removed Plaintiff's identification, reviewed it, and nevertheless declared Plaintiff to be "the guy".

39.    Law enforcement's misidentification of an arrestee is only entitled to any protection in the event the misidentification is reasonable.

40.    Officer Defendants' misidentification of Plaintiff was most certainly not reasonable given the attendant circumstances.  Officer Defendants' only basis for the arrest was Plaintiff's first and last name, as he did not match the description of the individual authorities were looking for, nor did any of the surrounding circumstances suggest that Plaintiff was the individual involved in whatever offense the other Joshua Lindenmuth committed.

41.    Officer Defendants were further provided with Plaintiff's driver's license, which not only listed a different birth date entirely, but also was unmistakenly vertical, indicating that the individual in front of them was over a decade too young to be their target.

42.    There were further no exigent circumstances present which would have precluded Officer Defendants from conducting a thorough investigation into Plaintiff's identity prior to effectuating the arrest.

43.    Chief Olson personally participated in Plaintiff's detention and exercised supervisory authority over Officer Murton during the arrest and transport. Chief Olson had a realistic and reasonable opportunity to prevent Plaintiff's unlawful seizure and detention, but instead ratified and acquiesced to Officer Murton's conduct.

44.    Chief Olson failed to intervene to prevent Plaintiff's unlawful seizure and detention despite knowledge of facts undermining probable cause.

45.     Officer Defendants' actions constituted an unreasonable seizure in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution, as they acted with reckless disregard for whether they had placed the correct individual under arrest.

46.     Officer Defendants acted intentionally, knowingly, or with reckless disregard for Plaintiff's constitutional rights. As a direct and proximate result of Officer Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and physical invasion.

47.     As a direct and proximate result of the acts and omissions described herein, Plaintiff suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

**COUNT II – SUPERVISORY LIABILITY**
**42 U.S.C. § 1983**
***Against Defendant Olson***

48.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

49.     At all relevant times during Plaintiff's unlawful arrest, Chief Olson present on scene as Officer Murton's supervisor.

50.     Chief Olson's failure to intervene or prevent Plaintiff's  unlawful arrest by Officer Murton without any reasonable attempts to verify his identity, and continuing said arrest after being presented with direct evidence contradicting that Plaintiff was the individual sought, constituted ratification and/or acquiescence to said conduct.

51.     Chief Olson acted with deliberate indifference to the potential constitutional violations that would foreseeable occur from failing to ensure identity before taking an individual into custody.

52.     As a direct and proximate result of the acts and omissions described herein, Plaintiff suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

**COUNT II – MUNICIPAL LIABILITY (Failure to Train, Supervise, or Discipline)**
**42 U.S.C. § 1983**
*Against Defendant Borough of Frackville*

53.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

54.     At all relevant times, Chief Olson acted as the final policymaker for Defendant Borough of Frackville with respect to law enforcement operations, arrest procedures, officer training, and supervision.

55.     Defendant Borough of Frackville, through Chief Olson, maintained policies, practices, and customs including:

a.   permitting arrests based solely on name matches without mandatory verification of date of birth or age;

b.   failing to require officers to compare identifying information prior to transport and booking;

c.   failing to train officers on mistaken-identity arrests and probable cause dissipation; and

d.   tolerating continued detention despite readily available exculpatory information.

56.     These practices created an obvious and substantial risk that individuals would be wrongfully arrested, detained, strip searched, and subjected to medical procedures. The risk of mistaken-identity arrests in name-only warrant executions is obvious and recurring.

57.     Defendant Borough acted with deliberate indifference to these known or obvious consequences.

58.     Defendant Olson personally participated in Plaintiff's arrest and detention and ratified Defendant Murton's conduct by permitting Plaintiff's continued confinement despite clear identity discrepancies.

59.     Defendant Borough further ratified the unconstitutional conduct through its failure to implement corrective safeguards prior to Plaintiff's release.

60.     Defendant Borough's policies, customs, and deliberate indifference were the moving force behind Plaintiff's constitutional injuries, including his unlawful arrest, prolonged detention, strip search, and forced medical treatment.

61.     As a direct and proximate result of the acts and omissions described herein, Plaintiff suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

## COUNT II – MUNICIPAL LIABILITY (Failure to Train, Supervise, or Discipline)
### 42 U.S.C. § 1983
### *Against Defendant Schuylkill County*

62.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

63.     At all relevant times, Schuylkill County owned, operated, controlled and maintained the Schuylkill County Prison and was responsible for establishing and enforcing the policies, procedures, customs, and practices governing its operation.

64.     Schuylkill County Prison failed to have any policy, practice, custom or procedure in place for circumstances such as this, wherein the correctional personnel became aware that a detainee was improperly in custody and therefore being unconstitutionally held.

65.    Failure to have any such policy, practice, or custom in place would foreseeably cause constitutional harm, particularly of the type that occurred here, where state actors become aware that continuing detention is unconstitutional but are without any method to correct this error.

66.    As a direct and proximate result of the acts and omissions described herein, Plaintiff suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL ISSUES OF FACT HEREIN.**

**WHEREFORE,** Plaintiff, Joshua Lindenmuth, prays for judgment against Defendants as follows, a Money judgment against Defendants for compensatory, special, and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest and punitive damages are available and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (§ 1983 Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988) and for such other relief as this Court deems just and equitable.

**van der Veen, Hartshorn & Levin**

*/s/ Kaitlin C. McCaffrey*
Kaitlin C. McCaffrey
Attorney for Plaintiff
1219 Spruce Street
Philadelphia, PA. 19107
(P) 215-546-1000
(F) 215-546-8529
kmccaffrey@mtvlaw.com

Date: March 18, 2026